UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SARAH MAYHEW, | § | Case No. |
| | § | |
| Plaintiff, | § | |
| | § | **COMPLAINT FOR DAMAGES** |
| v. | § | **UNDER THE TELEPHONE** |
| | § | **CONSUMER PROTECTION ACT** |
| WELLS FARGO BANK, N.A., | § | **AND OTHER EQUITABLE RELIEF** |
| | § | |
| Defendant. | § | |
| | § | **JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Sarah Mayhew ("Sarah"), is a natural person who resided in Tool, Texas, at all times relevant to this action.

2. Defendant, Wells Fargo Bank, N.A. ("WFB"), is a California national association that maintained its principal place of business in San Francisco, California, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over this matter as it arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

5. Within the past forty-eight months, specifically around August 2016, WFB began calling Sarah on her cellular phone ending in -1889 using an Automatic Telephone Dialing System

("ATDS") in connection with the collection of a mortgage debt which was solely in Sarah's husband's ("Husband") name.

6. Sarah never gave WFB permission to contact Sarah on her cellular phone and the mortgage in question was originated prior to Sarah's marriage to Husband.

7. Sarah believes WFB called her over 200 times in connection with the collection of Husband's debt.

8. When Sarah would answer WFB calls, sometimes there would be an automated message stating the caller was WFB and to return WFB's call.

9. When Sarah would answer WFB calls, sometimes there would be no one on the line.

10. On or around, August 2, 2016, Sarah advised WFB she had nothing to do with the mortgage.

11. During this conversation, Sarah communicated her desire that WFB cease calling her and to direct all calls to Husband and confirmed with WFB that WFB had Husband's contact information.

12. Despite this communication, WFB continued to call Sarah on her cellular phone ending in -1889 using an ATDS in connection with the collection of Husband's debt.

13. Around September 2016, Sarah reiterated her desire that WFB cease calling her.

14. Nevertheless, WFB continued to call Sarah on her cellular phone using an ATDS in connection with the collection of Husband's debt.

15. WFB's collection efforts, including but not limited to its telephone calls, caused Sarah emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

16. WFB collection efforts also intruded upon Sarah's privacy.

17. In addition, each time WFB placed a telephone call to Sarah, WFB occupied Sarah's telephone number such that Sarah was unable to receive other phone calls at that telephone number while WFB was calling her.

18. WFB's telephone calls also forced Sarah to lose time by having to tend to WFB's unwanted calls.

## APPLICABLE LAW

19. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

    Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

    137 Cong. Rec. 30,821 (1991).

20. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

21. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

22. A telephone dialing system with predictive dialer functionality is an ATDS within the meaning of the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

23. WFB used a telephone dialing system with predictive dialer functionality to place calls to Sarah on her cellular telephone.

24. The TCPA provides, in part:

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
>> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>>
>>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>>
>> * * *
>>
>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

25. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer*

- 4 -

*Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

26. Sarah was the "called party" in each telephone call WFB placed to Sarah's cellular telephone.

27. The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

*Willful Violations of the TCPA*

28. The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

29. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

30. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

31. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

32. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla 2012); *aff'd* 755 F.3d 1265 (11th Cir. 2014).

## COUNT ONE

### Violation of the Telephone Consumer Protection Act

33. Sarah re-alleges and incorporates by reference Paragraphs 5 through 32 above as if fully set forth herein.

34. WFB violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Sarah on her cellular telephone without Sarah's prior express consent or after such consent had been revoked.

35. In addition, because WFB (a) voluntarily placed telephone calls to Sarah's cellular telephone number in violation of the TCPA, and (b) failed to place intermittent live verification calls to ensure that WFB had Sarah's express consent to be called using an ATDS, WFB's violations were willfully and knowingly made.

## JURY DEMAND

36. Sarah demands a trial by jury.

**PRAYER FOR RELIEF**

37. Sarah prays for the following relief:

   a. An order enjoining WFB from placing further telephone calls to Sarah's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

   b. Judgment against WFB for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call WFB made in violation of the TCPA.

   c. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: January 10, 2018

By: /s/ Jeffrey S. Hyslip
Jeffrey S. Hyslip, Esq.
Ohio Bar No. 0079315
HYSLIP & TAYLOR, LLC, LPA
1100 W. Cermak Rd., Suite B410
Chicago, IL  60608
Phone: 312-380-6110
Fax: 312-361-3509
Email: jeffrey@lifetimedebtsolutions.com
*Attorney for Plaintiff*